UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/12/18

E. MISHAN & SONS, INC.,

                                    Plaintiff,

              -v-

SMART AND EAZY CORP., and MASTERPAN, INC.,

                                    Defendants.

18 Civ. 3217 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Plaintiff E. Mishan & Sons ("Emson") brings this action against defendants Smart and Eazy Corp. ("S&E"), and Masterpan, Inc. ("Masterpan"). Emson alleges unfair competition due to false advertising in violation of 15 U.S.C. § 1125(a) of the Trademark Act of 1946 ("Lanham Act").

Masterpan and S&E now move for dismissal, based on lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), failure to state a claim under Rule 12(b)(6), and improper venue under Rule 12(b)(3). In the alternative, defendants move for transfer of venue to the Central District of California pursuant to 28 U.S.C. §§ 1404(a), 1406(a), and 1631.

For the reasons that follow, the Court denies defendants' motions, with one exception: The Court grants the motion to dismiss Emson's claims against S&E for failure to state a claim.

## I.    Background

### A.    Facts[1]

#### 1.    Emson

Emson is a New York corporation with its principal place of business in New York. Compl. ¶ 7. Emson markets and sells consumer products throughout the United States both to wholesalers and directly to customers via print media, the Internet, and television advertising. *Id.* ¶ 11.

Since at least 2015, Emson has marketed and sold "Gotham Steel," a line of nonstick cookware and bakeware that includes pots and pans. *Id.* ¶ 12. "The Gotham Steel pots and pans are made of aluminum and have a copper-colored, non-stick ceramic and titanium coating." *Id.* ¶ 13.

Emson advertises and sells the Gotham Steel pots and pans through direct response ("DRTV") commercials broadcast on various cable network channels. *Id.* ¶ 14. Emson "has spent over ten million dollars on advertising Gotham Steel cookware on television." *Id.* ¶ 15. Emson also "sells the Gotham Steel pots and pans throughout the United States, including New York and this district, directly to consumers through Internet websites and to nationwide retailers . . . for resale to consumers." *Id.* ¶ 16.

The "retail packaging and label inserts for the Gotham Steel pots and pans include" an "As Seen On TV" logo. *Id.* ¶ 18. Emson also displays this logo both "on its Internet websites"

---

[1] This account is drawn from the Complaint. Dkt. 1 ("Compl."). For the purpose of resolving the motion to dismiss, all factual allegations in the Complaint are presumed true. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). For the purposes of resolving the motions under Rules 12(b)(1) and 12(b)(3), the Court also considered the following factual submissions: the declarations of Christopher Kikade, Dkt. 17 ("Kikade Decl."), Leo Lee, Dkt. 15-4 ("Lee Decl."), Raejndra Nagrani, Dkt. 18 ("Nagrani Decl."), Brian Doyle, Dkt. 25-5 ("Doyle Decl."), and the exhibits thereto. The Court cites here the parties' memoranda of law as follows: Dkt. 16 ("D. Mem."); Dkt. 25 ("P. Mem."); and Dkt. 26 ("D. Rep.").

and "in printed advertisements and promotional materials." *Id.* ¶ 19. Gotham Steel claims that it "has sold hundreds of thousands of Gotham steel pots and pans labelled and/or packaged in retail boxes printed with the 'As Seen on TV' logo." *Id.* ¶ 20.

## 2. S&E's and Masterpan's Marketing of Their "Original" Copper Pan

Defendants S&E and Masterpan are each California corporations with a principal place of business in California. *Id.* ¶¶ 8–9.

Emson alleges that, in or about 2016, "long after Emson introduced the Gotham Steel pots and pans," defendants began marketing and selling a product bearing the trademark "The Original Copper Pan" (the "OCP"). *Id.* ¶¶ 24, 69. According to Emson, Dreambiz Ltd. of Hong Kong owns the trademark "The Original Copper Pan," Registration No. 5390167. *Id.*, Ex. D. Emson alleges that Dreambiz Ltd. "has shipped non-stick cookware on several occasions to, and only to, defendant S&E." *Id.* ¶ 35.

Emson claims that defendants sell the OCP "directly to consumers, including consumers in [the Southern District of New York], via the Internet and, as well, to retailers for resale to consumers, in competition with Emson's Gotham Steel Cookware." *Id.* ¶ 25. Specifically, Emson alleges, defendants own and operate the website, www.theoriginalcopperpan.com, through which they market and sell the OCP. *Id.* ¶ 33. Defendants also allegedly sell and market OCP cookware on Groupon.com. *Id.* ¶ 43.

Emson alleges that, by branding its product as the "original" copper pan, defendants "are attempting to deceive the public by falsely and deceptively conveying to consumers that its cookware is the first of its kind and that Emson's (and other's) products are not the originals but are instead mere imitations of Defendants' cookware." *Id.* ¶ 28. Emson alleges that defendants'

allegedly "false and deceptive use of the descriptor 'original' is part of a pattern and practice of false advertising on its part." *Id.*

Emson further alleges that defendants falsely advertise certain versions of the OCP as being made of, and not merely coated with, copper. *Id.* ¶ 48. According to Emson, defendants hold out the OCP line of cookware as "copper-infused," "made of ultra-tough copper," and featuring "copper construction." *Id.* ¶¶ 29, 41–42. Although each pan has a copper-colored cooking surface, Emson alleges that it ran tests on samples of the 12-inch OCP, which the OCP website describes as "nonstick ceramic plus copper" and having a "durable, copper-infused nonstick ceramic cooking surface." *Id.* ¶ 38. According to Emson, the "test results indicate that the cores of each of the tested Original Copper Pans had undetectable levels of copper" and that the inner coating on the samples also lacked the presence of copper. *Id.* ¶ 46.

Finally, Emson claims that although defendants, like Emson, "use an 'As Seen On TV' logo in their advertising," *id.* ¶ 30, "[d]efendants have not advertised any of [the OCP] cookware on television or any television advertising for [d]efendants' cookware has been miniscule." *Id.* ¶ 50. Accordingly, Emson alleges, "the use of the 'As seen on TV' slogan by [d]efendants is a material misrepresentation." *Id.* ¶ 52.

Emson contends that the false claims in defendants' advertising—the claim to have been the "original" copper pan, the claim that the OCP is made of copper, and the claim that defendants' products have been "seen on TV" —have "divert[ed] sales from Emson, trade[d] off the goodwill built up by Emson's extensive television advertising campaign to create public recognition of its products, and deceive[d] the buying public." *Id.* ¶ 55.[2]

---

[2] Emson's Complaint largely treats the two defendants collectively. In litigating the motions to dismiss, the parties cast differently the relationship between them. Defendants acknowledge that Masterpan sells products to the OCP website for resale to consumers. *See* D. Mem. at 6. Emson

## B.    Procedural History

On April 12, 2018, Emson filed its Complaint.  Dkt. 1.  It brings four claims under the Lanham Act, 15 U.S.C. §§ 1125(a)(1)(A) & (B): for falsely advertising that defendants' copper pan is the "original" of its kind, Compl. ¶¶ 66–76; for falsely advertising that defendants' pan is "copper," "copper-infused," of "copper-construction," and "made of ultra-tough Copper," *id.* ¶¶ 77–85; for falsely advertising that plaintiffs' product have been "seen on TV," *id.* ¶¶ 86–94; as well as claims for unfair competition, false designation of origin, false description of fact, and misrepresentation of fact, also based on the defendants' advertising claim that their products are "as seen on TV," *id.* ¶¶ 95–103.

On June 4, 2018, Masterpan and S&E filed a joint motion to dismiss on the grounds identified above, Dkt. 15, a supporting memorandum of law, Dkt. 16, and factual materials, Dkts. 17–18.  On July 16, 2018, Emson filed a brief in opposition, Dkt. 25.  On July 23, 2018, defendants filed a reply.  Dkt. 26.

## II.    Overview

Defendants move to dismiss on multiple grounds.  The Court first considers defendants' argument that the Court lacks personal jurisdiction.  The Court then considers the other asserted grounds for dismissal: improper venue and failure to state a claim.  Because Emson's claims against Masterpan survive these motions, the Court last considers the motion to transfer these surviving claims to the Central District of California.

---

contends that because the defendants share a principal place of business, S&E is accountable for Masterpan's advertising. *See* P. Mem. at 7. Defendants counter that "S&E is an independent, third party package delivery company that provides shipping services to individuals and businesses" and that it merely "provides mailing addresses for some customers, including Masterpan." D. Mem. at 2.

III.    **Motion to Dismiss for Lack of Personal Jurisdiction**

      A.    **Applicable Legal Standards**

"[T]he plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (citation omitted); *see also In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013). What a plaintiff must show "to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'" *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (per curiam) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). In the posture here, where a case is prior to discovery, a plaintiff may defeat such a jurisdiction testing motion "by pleading in good faith[] legally sufficient allegations of jurisdiction. At such a preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations." *Id.*; *see also In re Terrorist Attacks*, 714 F.3d at 673 ("In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a *prima facie* showing that jurisdiction exists." (citation omitted)).

A plaintiff may make this showing through its "'own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant.'" *S. New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)). The Court "construe[s] the pleadings and affidavits in the light most favorable to [the] plaintiff[], resolving all doubts in [the plaintiff's] favor." *Dorchester*, *722 F.3d* at 85 (quoting *S. New Eng. Tel.*, 624 F.3d at 138); *accord A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993) ("[W]here the issue is addressed on affidavits, all allegations are construed in the light most favorable to the

plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." (citation omitted)). The Court, however, will neither "draw argumentative inferences in the plaintiff's favor" nor "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks*, 714 F.3d at 673 (citations omitted).

"In a federal question case, where the defendant resides outside the forum state, federal courts apply the forum state's personal jurisdiction rules if the applicable federal statute does not provide for national service of process." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004) (citation omitted). The Lanham Act does not provide for national service of process. Accordingly, New York's long-arm statute, New York Civil Practice Law and Rules ("CPLR") § 302(a), governs the instant action. *See id.*; *Fort Knox Music Inc. v. Baptiste*, 203 F.3d 193, 196 (2d Cir. 2000).

Under CPLR § 302(a)(1), two conditions must be met for a court to exercise personal jurisdiction over a non-domiciliary defendant. First, the defendant must "transact[ ] [ ] business within the state or contract[ ] anywhere to supply goods or services in the state." C.P.L.R. § 302(a)(1) (2006). Second, the cause of action must arise from the "act[s] which are the basis of jurisdiction." *Id.* The Second Circuit has held that this second condition requires a showing that the contacts with the state had a "substantial relationship" to the cause of action. *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006).

Section 302(a)(1) is a "single act" statute; therefore, the defendant need not have engaged in more than one transaction in, or directed to, New York for New York courts to invoke jurisdiction. *See Deutsche Bank Sec., Inc. v. Montana Bd. of Investments*, 7 N.Y.3d 65, 70 (2006). Such jurisdiction exists even if "the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the

transaction and the claim asserted." *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988) (citations omitted); *see also Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 787 (2d Cir.1999) (finding jurisdiction based on a single transaction where defendant was not physically present in state). A court may also find jurisdiction based on the totality of the defendant's conduct. *See, e.g.*, *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986) ("No single event or contact connecting defendant to the forum state need be demonstrated; rather, the totality of all defendant's contacts with the forum state must indicate that the exercise of jurisdiction would be proper.") (citations omitted).

Section 302(a)(2) provides an alternative basis for personal jurisdiction over a defendant who "in person or through an agent . . . commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act." As with Section 302(a)(1), "there is no minimum threshold of activity required so long as the cause of action arises out of the allegedly infringing activity in New York." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 567 (S.D.N.Y. 2000). Even "[o]ffering one copy of an infringing work for sale in New York . . . constitutes commission of a tortious act within the state sufficient to imbue [the] Court with personal jurisdiction over the infringers." *Id.* (quoting *Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc.*, 829 F. Supp. 62, 64 (S.D.N.Y. 1993).

### B. Discussion

Emson argues that the Court has specific jurisdiction over defendants under New York's long-arm statute, C.P.L.R. §§ 302(a)(1), based on defendants' having caused sales in New York of the products at issue. P. Mem. at 9–15. For purposes of analyzing the competing arguments as to this question, the Court treats Masterpan and S&E collectively (and refers to them together as "Masterpan"), recognizing, as developed in the discussion of the motions under Rule 12(b)(6),

8

that Emson's allegations linking Masterpan to the sale of the OCP are substantially more fulsome.

Masterpan does not dispute Emson's assertion that Masterpan's products are sold within New York. In contesting personal jurisdiction, Masterpan counters that *it* "has never sold any accused products to consumers or businesses within New York." D. Mem. at 8. Rather, Masterpan represents, it sells its products "to third party OCP website [sic], which is a generally-available website and not domiciled in New York or directed at New York consumers." *Id.* at 8. Masterpan emphasizes that it does not "advertise[ ] in New York[ ] or receive[ ] funds from any individual business in New York," and that it is not "licensed or registered to do business in New York and do[es] not pay New York taxes." *Id.* Masterpan further disputes that it "own[s] or controls marketing statements on the third-party websites from which Plaintiff purchased the accused products." *Id.*. at 1.

The Court holds that Emson has made both showings required under CPLR § 302(a)(1) to demonstrate personal jurisdiction over Masterpan in New York.

### 1. Masterpan Transacts Business in New York

Under the long-arm statute, Emson must first establish that Masterpan "transacts [ ] business within the state or contracts anywhere to supply goods or services in the state." C.P.L.R. § 302(a). Emson has made this showing in two ways.

First, Emson purchased three products from the OCP website, which, Emson alleges, Masterpan controls. Because New York's long-arm statute is a single-act statute, *Deutsche Bank Sec., Inc.*, 7 N.Y.3d at 70, these three sales and deliveries constitute more than sufficient business contact with New York to satisfy the threshold requirement that the defendant conduct business within the state. This showing would suffice, in fact, even if the OCP website used by

Masterpan to facilitate its sales were outside of Masterpan's ownership and control. *See EnviroCare Techs., LLC v. Simanovsky*, No. 11 Civ. 3458 (JS) (ETB), 2012 U.S. Dist. LEXIS 78088, at *13 (E.D.N.Y. June 4, 2012) ("[E]ven though Defendants did not personally manage the websites through which they sold their products, their internet-based activities established regular business with foreign jurisdictions, including New York.")."

That Masterpan does not operate a brick and mortar store in New York is also not determinative. What matters is that Masterpan, via the OCP website and/or Groupon.com, marketed its products to residents of New York and sold those products, through at least one of those websites, to people within that state, appreciating that the products would be sent to New York residents. By advertising its product on interactive websites through which users make purchases, Masterpan purposefully availed itself of the privilege of conducting business in New York. *See, e.g., Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 567 (S.D.N.Y. 2000) (denying motion to dismiss for lack of personal jurisdiction based on finding that operating an interactive website that is accessible in New York constitutes transacting business under Section 302(a)(1)).

Second, Emson plausibly alleges that Masterpan has shipped products into the state. Even if the Court accepts as true Masterpan's assertions that it has not *sold* products in New York, Emson's allegation that Masterpan has *shipped* infringing products to New York is sufficient to show that Masterpan conducts business in New York. *See Pearson Education, Inc. v. Shi*, 525 F. Supp. 2d 551 (S.D.N.Y. 2007). In *Pearson*, the district court found personal jurisdiction with respect to plaintiffs' Lanham Act claims where the defendant sold infringing works through third-party websites *and shipped* those products into the forum where plaintiff filed the lawsuit. *Id.* at 554. Similarly here, Emson alleges that Masterpan does ship products to

New York. Masterpan notably does not dispute—indeed, it appears to confirm—this point. In his declaration, Masterpan chief financial officer Rajendra Nagrani attests that "Masterpan ships its products through an independently-owned, third party freight shipping company, Smart & Eazy." Nagrani Decl. at 2. Similarly, the exhibits attached to Emson's Complaint drawn from the Groupon.com website suggest that seller Masterpan handles the pricing and shipping of its products purchased through that website. *See* Compl. Exs. I–K ("The merchant is solely responsible to purchasers for the fulfillment, *delivery*, care, quality, and *pricing* information of the advertised goods and services." (emphasis added)).

Both Groupon.com and the OCP website list Masterpan's principal place of business, in California, as the return address for products purchased on those websites. This fact does not defeat Emson's showing of personal jurisdiction, as it is inconsistent with neither Masterpan's role in causing these websites to sell its products to New Yorkers nor Masterpan's role of sending its products to New York buyers. And while Emson, pre-discovery, does not yet have access to Masterpan's contractual agreement with the OCP website and Groupon.com, it is fair to infer that Masterpan derives some financial or business benefit from the sale to customers of its products through these sites, including the sale of the three products to Emson in New York. Masterpan does not proffer otherwise. Accordingly, the Court holds, the shipment of the allegedly infringing cookware into New York "constituted *the* transacting of business." *John Wiley & Sons, Inc. v. Treeakarabenjakul*, No. 09 Civ. 2108 (CM), 2009 WL 1766003, at *4 (S.D.N.Y. June 18, 2009) (citing *Pearson Educ.*, 525 F. Supp. at 558) (emphasis in original).

### 2. The Cause of Action Arises From Business Masterpan Transacted in New York

Emson must also show that its claims here arise from the "act[s] which are the basis of jurisdiction." C.P.L.R. § 302(a). Emson easily clears this bar. Its claim is that Masterpan has

engaged in false advertising as to Masterpan's pots, including by falsely terming them "original," by falsely hyping their copper content, and by falsely claiming that its products had been "seen on TV." Those claims broadly implicate Masterpan's sales, including those to New York consumers. And Emson adequately pleads that three units of Masterpan cookware were sold to New York residents and shipped to New York. This showing is sufficient to demonstrate that Emson's claims arise from the conduct that gives rise to personal jurisdiction.

### 3. The Exercise of Jurisdiction is Consistent with Due Process

Having held that New York's long-arm statute authorizes the exercise of jurisdiction over Masterpan, the Court finally must satisfy itself that this exercise is consistent with due process. To do so, the Court applies a minimum-contacts test and a reasonableness inquiry. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002).

To determine whether a defendant has sufficient minimum contacts with the New York venue, the Court considers whether the defendant "'purposefully availed itself' of the privilege of doing business in the forum state and could 'reasonably anticipate being haled into court there.'" *Pearson Educ., Inc. v. Shi*, 525 F. Supp. 2d 551, 557 (S.D.N.Y. 2007) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985)). Here, Masterpan's contacts with New York—causing its cookware to be marketed to, and then shipped to, New York residents— readily qualify as purposeful availment so as to satisfy the minimum contacts test.

Although a plaintiff's showing of "minimum contacts" will generally satisfy due process, the defendant can present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 568 (2d Cir.1996) (quoting *Burger King*, 471 U.S. at 477). The reasonableness inquiry "hinges on whether the assertion of jurisdiction comports with 'traditional notions of fair play

and substantial justice.'" *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 107 (quoting *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945)). The Court weighs five factors when determining reasonableness:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial[ ] system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering social substantive policies.

*Kernan v. Kurz–Hastings, Inc.*, 175 F.3d 236, 244 (2d Cir. 1999) (internal quotations and citations omitted).

These factors make the exercise of jurisdiction entirely reasonable. Masterpan allegedly sold and shipped products to New York. Having chosen to do so, Masterpan could reasonably have expected to be subject to suit in New York in connection with such sales and deliveries to New York buyers. Masterpan has not made any showing of countervailing considerations, such as a burden that trying this case in New York might pose to it or a unique interest that California has in this controversy. And the New York long-arm statute does not by nature tempt due process limits; on the contrary, "[t]he New York long-arm statute does not extend in all respects to the constitutional limits." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60–61 (2d Cir. 2012). Accordingly, the Court holds that both the minimum contacts and reasonableness requirements of due process have been met.

The Court therefore finds the exercise of personal jurisdiction here proper.

## IV.     Motion to Dismiss for Improper Venue

### A.     Applicable Legal Standards

The plaintiff also "bears the burden of demonstrating that [its] chosen venue is proper." *Vann v. Fischer*, No. 11 Civ. 1958 (JPO), 2012 WL 2384428, at *4 (S.D.N.Y. June 21, 2012). In

ruling on a motion to dismiss pursuant to Rule 12(b)(3), the Court accepts as true all factual allegations in the non-moving party's pleadings, including the complaint and supporting affidavits, and draws all reasonable inferences in that party's favor. *See Blakely v. Lew*, No. 13 Civ. 2140 (JMF), 2013 WL 6847102, at *1 (S.D.N.Y. Dec. 30, 2013). If the Court chooses not to hold an evidentiary hearing and, instead, relies only "on pleadings and affidavits, the plaintiff need only make a *prima facie* showing of [venue]." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005) (alteration in original).

### B. Discussion

In cases where the plaintiff brings a civil action in a district other than the one where any defendant lives, venue will be proper if "a substantial part of the events or omissions giving rise to the claim occurred" in that judicial district. 28 U.S.C. § 1391(b)(2).

Emson makes the requisite *prima facie* showing of venue here. The events giving rise to Emson's claim are the advertisement of products that are marketed by defendants to New York residents and the shipping of products to venues including New York. Emson's Complaint sufficiently alleges both that these products were marketed to individuals in New York through the interactive OCP website and through Groupon.com, and that they thereafter were shipped by Masterpan and delivered to Emson's address in New York. There is a sufficiently substantial nexus between Emson's claims and this forum to make venue here proper under § 1391(b)(2).

## V. Motion to Dismiss for Failure to State a Claim

### A. Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that

14

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must be dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When resolving a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch*, 699 F.3d at 145. That tenet, however, does not apply to legal conclusions. *See Iqbal*, 556 U.S. at 678. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

**B.  Discussion**

As noted, Emson brings false advertising claims under 15 U.S.C. §§ 1125(a)(1)(A)–(B). The analysis as to whether these state claims differ by defendant.

**1.  Masterpan**

The Complaint states a claim under the Lanham Act against Masterpan. The Act makes liable:

> [a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any . . . false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities[.]

15 U.S.C. § 1125(a)(1).

Here, the Complaint plausibly alleges that Masterpan falsely describes its products in several respects. First, it claims that Masterpan falsely describes its pots as being made of

copper construction (e.g., "having a durable, copper-infused nonstick ceramic cooking surface") when in fact they are not. ¶¶ 38, 44. Emson's basis for asserting falsehood are tests that it ran to determine the composition of the OCP, which did not detect any level of copper in the "cores of each of the tested [OCPs]." *Id.* ¶ 46. This allegation of a central factual falsehood as to the composition of Masterpan's product is clearly sufficient to state a claim under the Lanham Act. In addition, Emson plausibly alleges two other falsehoods: that (1) Masterpan's "branding of its products as The Original Copper Pan" is deceptive in that it suggests it "is the first of its kind," when in fact other copper pots and pans preceded it on the market, *Id.* ¶ 27; and (2) Masterpan misrepresents its products as having been "As Seen on TV," *Id.* ¶ 53, when in fact they—unlike Emson's competing products—were not.[3]

Masterpan's attempts to distance itself from the statements on the OCP website and Groupon.com do not gain traction on a motion to dismiss. It is conceivable that Masterpan had no agency over or awareness of the statements made to market its product in these fora, and Masterpan will be at liberty to attempt to develop such theories in discovery. But on a motion to dismiss, the Court cannot so assume. Viewing the facts in the light most favorable to the plaintiff, it is plausible that Masterpan controls or is party to the marketing statements regarding its products that appear on both websites. The OCP website bears the name of the product that Masterpan manufactures and sells. Even if, as defendants note, the domain is not registered to Masterpan, D. Mem. at 7, it is plausible that Masterpan has had a say in the words used to market its products as sold through that website. Masterpan's control over the advertising on Groupon.com is even more plausible. The Groupon.com webpage explicitly states that the

---

[3] To be sure, Emson contradictorily alleges that Masterpan does not market the OCP on television or that it does so minimally. *See* Compl. ¶ 50. Discovery will determine whether in fact the OCP has never been marketed on television, or whether it has been, in which case Masterpan may have available a defense, at least as to this claim, of literal truthfulness.

product is "[s]old by Master[p]an" and that "the merchant is solely responsible to purchasers for the fulfillment, delivery, care, *quality*, and pricing information of the advertised goods and services." Compl. Exs. I, K (emphasis added). These allegations easily make plausible the claim that Masterpan is responsible for the advertisements made in connection with the OCP on the OCP website and Groupon.com.

### 2.    S&E

Emson's Complaint, however, does not adequately plead Lanham Act claims against S&E.

The Complaint persistently lumps both Masterpan and S&E together as "defendants." *See, e.g.*, Compl. ¶ 25 ("On information and belief, Defendants sell The Original Copper Pan cookware products directly to consumers, including consumers in this district, via the Internet and, as well, to retailers for resale to consumers . . . ."). It recites sufficient basis on which to conclude that Masterpan markets and sells the OCP. For example, it alleges, with documentary support, that the Groupon.com website explicitly states that the OCP is "[s]old by Master[p]an." *Id.*, Ex. I. The Complaint also attaches documentary evidence that Masterpan shares directors with Dreambiz, Ltd., which owns the trademark "The Original Copper Pan." *See id.* Exs. B–C.

The Complaint, however, does not contain any such specific pleadings as to S&E. The only connection Emson articulates between S&E and the allegedly misleading statements is that S&E shares an address with Masterpan. *See* Compl. ¶ 8–9. That is not a sufficient basis on which to tie S&E to the actionable conduct alleged here. And the Complaint's allegations that S&E falsely described or advertised any relevant product are conclusory. Pleadings, however, "must contain something more than . . . a statement of facts that merely creates a suspicion [of] a

legally cognizable right of action," *Twombly*, 550 U.S. at 555. Accordingly, the Court grants the motion to dismiss the claims against S&E.

## VI.    Motion to Transfer Venue

The Court, finally, considers Masterpan's motion to transfer venue to the Central District of California, the site of its principal place of business.

### A.    Applicable Legal Standards

A district court has broad discretion when deciding a motion to transfer venue. *N.Y. Mar. & Gen. Ins. Co. v. Lafarge N.A., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010). However, the party seeking transfer "carries the 'burden of making out a strong case for transfer.'" *Id.* at 114 (quoting *Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir. 1989)). To prevail, the moving party must make a "clear and convincing" showing that transfer is proper. *See id.* at 113–14; *see also Hershman v. UnumProvident Corp.*, 658 F. Supp. 2d 598, 600 (S.D.N.Y. 2009); *Schieffelin & Co. v. Jack Co. of Boca, Inc.*, 725 F. Supp. 1314, 1321 (S.D.N.Y. 1989) ("The moving party must make a clear-cut showing that transfer is in the best interests of the litigation.").

When evaluating a motion to transfer, the Court's principal consideration is "the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Courts undertake a two-step inquiry to decide motions to transfer venue under § 1404(a). *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 743 (S.D.N.Y. 2013).

At the first step, the Court must determine "'whether the action could have been brought in the transferee district.'" *Id.* (quoting *Robertson v. Cartinhour*, No. 10 Civ. 8442 (LTS) (HBP), 2011 WL 5175597, at *3 (S.D.N.Y. Oct. 28, 2011)). If so, the Court then must determine

"'whether transfer would be an appropriate exercise of the Court's discretion.'" *Everlast*, 928 F. Supp. 2d at 743 (quoting *Robertson*, 2011 WL 5175597, at *3). This second step entails weighing the following factors: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *Lafarge*, 599 F.3d at 112 (quoting *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106–07 (2d Cir. 2006)). The moving party must show by clear and convincing evidence that these seven factors favor the new venue. Otherwise, the action must be maintained in this District. *See id.*

    **B.**     **Discussion**

The Court considers first whether Emson could have brought this action in the Central District of California. Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). Because Masterpan resides in California, venue is proper there. *See* Compl. ¶ 19; 28 U.S.C. § 1391(c).

The Court next applies the multi-factor balancing test. The Court finds that one factor favors a transfer of venue (the locus of operative fact) and another favors denying transfer (the plaintiff's choice of forum). The remaining factors, however, are neutral or nearly so.

*Locus of operative facts*: This factor is a primary one in determining a § 1404(a) motion to transfer. *Smart v. Goord*, 21 F. Supp. 2d 309, 316 (S.D.N.Y. 1998) (citation omitted). It "substantially favors transfer from this district when a party 'has not shown that any of the operative facts arose in the Southern District of New York.'" *SBAV LP v. Porter Bancorp, Inc.*, No. 13 Civ. 372 (PAE), 2013 WL 3467030, at *4 (S.D.N.Y. July 10, 2013) (quoting *Dr. Boy*

*GmbH v. Nationwide Ins.*, No. 96 Civ. 3217 (AGS), 1996 WL 350699, at *2 (S.D.N.Y. June 25, 1996)). "[W]here there is no material connection between this district and the operative facts[,] the interests of justice require the transfer of the action." *Cohn v. Metro. Life Ins., Co.*, No. 07 Civ. 0928 (HB), 2007 WL 1573874, at *3 (S.D.N.Y. May 31, 2007) (citation omitted). "To determine the locus of operative facts, a court must look to the site of the events from which the claim arises." *AVEMCO Ins. Co. v. GSV Holding Corp.*, No. 96 Civ. 8323 (LAP), 1997 WL 566149, at *6 (S.D.N.Y. Sept. 11, 1997) (citation omitted). In assessing this factor, the Court focuses on "the degree of relationship between the forum and the cause of action." *CYI, Inc. v. Ja–Ru, Inc.*, 913 F. Supp. 2d 16, 21 (S.D.N.Y. 2012).

Here, important facts giving rise to Emson's claims occurred in California. That is because Emson claims false advertising by Masterpan. The inquiries as to Masterpan's causal role in making the allegedly false representations, the basis on which these representations were made, and the development of the company's marketing plan, as relevant, are likely to turn on events occurring in or around Masterpan's principal place of business.

But the pertinent evidence will not uniformly come from there. Some of the proof used to test the validity of Masterpan's claims will derive from elsewhere. Masterpan's claim that its product was the "original" of its kind will largely be proven, or disproven, based on plaintiffs' ability to muster evidence as to prior incarnations of this cookware including, presumably, Emson's own. Masterpan's claim that its product is copper-based will presumably turn on expert analyses like the one Emson claims to have conducted. There is no reason to assume that such extrinsic-to-Masterpan proof is uniquely situated, if at all, in California. And the truthfulness of Masterpan's claim that its product has been "seen on TV" will presumably turn on analyses drawn from its business records but also from those of the television networks or station on

which Masterpan may claim to have aired its advertisements. Separately, to the extent that Masterpan may carry through on the suggestion in its briefs that it does not manufacture the product at issue, its proof would presumably turn on evidence from the actual manufacturer. Masterpan, however, has not represented who that entity is or where it is situated, but presumably, in light of its motion to transfer venue, would have done so had that entity been California-based.

There will also be some proof derived from this District. Emson alleges, and represents that it will show, that New York consumers were among those who bought the OCP. Of necessity, some such proof will be presented at trial. However, such proof will presumably be limited in scope. Emson has not alleged facts indicating that sales by Masterpan to New York consumers are unique.[4]

Accordingly, the Court finds that the locus of operative facts, on balance, weighs in favor of transferring venue to the Central District of California.

*Plaintiff's choice of forum*: This factor, like the locus of operative facts, is given considerable weight. *See SBAV LP v. Porter Bancorp, Inc.*, No. 13 Civ. 372 (PAE), 2013 WL 3467030, at *11 (S.D.N.Y. July 10, 2013) ("A plaintiff's choice of forum is accorded considerable weight in the § 1404(a) balancing test."). And there are no offsetting facts. Plaintiffs have grounded their decision to sue here on, as alleged, Masterpan's having marketed and caused multiple sales of its product to occur in this District. This factor thus strongly favors denial of the motion to transfer. *See, e.g., Atlantic Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 698 (S.D.N.Y. 2009) (finding that plaintiffs' choice of forum merited substantial

---

[4] One or both parties presumably may also seek testimony and documents from Dreambiz, Ltd., the Hong Kong-based company that owns the trademark "The Original Copper Pan." Compl. ¶ 34.

deference where "three out of six of them maintain their principal place of business [there], and because defendant conducts business [there]"); *Hershman v. UnumProvident Corp.*, 658 F. Supp. 2d 598, 601 (S.D.N.Y. 2009) (finding that "plaintiff's choice of forum weighs against a transfer" where defendant has offered "no evidence that plaintiff chose the Southern District to give him an improper advantage or put defendants at a tactical disadvantage").

*Other factors*:  On close consideration, the Court's judgment is that all other factors are neutral or close to it.  Indeed, neither party fulsomely litigated this motion—each side's submissions as to various factors were sparse.

In many cases, the convenience of witnesses is a key factor.  Neither party, however, has provided a list of witnesses to demonstrate the greater suitability of one forum over the other. *See, e.g.*, *Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 479 (S.D.N.Y. 2006) ("Having failed to identify particular unwilling witnesses who might be more available in California than in New York, the Defendants have failed to establish that this factor weighs in their favor."); *Kiss My Face Corp. v. Bunting*, No. 02 Civ. 2645 (RCC), 2003 WL 22244587, AT *2 (S.D.N.Y. Sept. 30, 2003) (finding that convenience of witnesses weighed against transfer because movant "failed to supply the Court with any list, detailed or otherwise," of witnesses inconvenienced by the current forum); *Orb Factory, Ltd. v. Design Sci. Toys, Ltd.*, 6 F. Supp. 2d 203, 208–09 (S.D.N.Y. 1998) ("Vague generalizations and failure to clearly specify the key witnesses to be called, along with a statement concerning the nature of their testimony, are an insufficient basis upon which to grant a change of venue under § 1404(a).").  And the nature of the claims here, which appears largely to turn largely on the truth or falsity of Masterpan's marketed claims about its product, is such that this case is inherently less likely than many to

require a lengthy autopsy of corporate decision-making and a consequent long line of corporate witnesses.

Nor has either party argued, let alone shown, that the location of relevant documents presents a material convenience issue. And, in an era of electronic maintenance and transmission of discovery, this factor is widely and rightly regarded as of diminished importance. *See ESPN, Inc. v. Quicksilver, Inc.*, 581 F. Supp. 2d 542, 548 (S.D.N.Y. 2008) ("In an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly." (citing *Angelov v. Wilshire Bancorp*, No. 06 Civ. 4223 (CM), 2007 WL 237513, at *4 (S.D.N.Y. Aug. 14, 2007))).

Nor has either party identified unique issues as to its convenience or as to why an imbalance in the parties' financial or other means make a transfer (or the lack thereof) in the interests of justice. *Cf. Am. Steamship Owners Mut. Protection and Idem. Ass'n, Inc. v. Lafarge N.A., Inc.*, 474 F. Supp. 2d 474, 485 (S.D.N.Y. 2007) (finding that the relative means favors plaintiff's choice of forum where plaintiff's "revenue and size are dwarfed" by defendant); *Herbert Ltd. Partnership v. Electronic Arts, Inc.*, 325 F. Supp. 2d 282, 290 (S.D.N.Y. 2003) (finding that relative means favors plaintiff's choice of forum where defendant's "annual revenue appears to have exceeded [plaintiff's] annual revenue by a factor of more than one thousand in 2003").[5]

---

[5] Under the case law, the convenience of counsel is not germane to a motion to transfer. *See, e.g., Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 374 (S.D.N.Y. 2006) ("[T]he convenience of counsel is not an appropriate factor to consider on a motion to transfer." (quoting *Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*, 119 F. Supp. 2d 433, 438 (S.D.N.Y. 2000)); *Cento Grp., S.P.A. v. OroAmerica, Inc.*, 822 F. Supp. 1058, 1061 (S.D.N.Y. 1993) ("The convenience of counsel is of relatively little consequence . . . ."). In any event, Emson is represented by New York area counsel and Masterpan is represented by New York (and California) counsel.

On balance, therefore, one important factor (locus of events) favors transfer and another important factor (the plaintiff's choice of forum) favors the current venue. The Court therefore cannot, and does not, find that the balance of factors clearly favors transfer or that transfer, in any real sense, is necessary here to further "the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a); *see, e.g.*, *Ramirez v. SupportBuddy Inc.*, 2018 WL 2089362 (S.D.N.Y. May 4, 2018) (denying motion to transfer case to Eastern District of California, even though all defendants resided in California, because, *inter alia*, "plaintiff resides in New York and accessed defendants' website from New York" and "defendants do not provide any reasons for why it would be inconvenient for them to litigate in New York"); *Karam v. N.Y. Power Auth.*, No. 16 Civ. 6286 (VB), 2017 WL 1424568, at *2 (S.D.N.Y. 2017) (finding that plaintiff's choice of forum should not be disturbed where all other factors were neutral and locus of operative facts was split between multiple fora); *Hershman*, 658 F. Supp. 2d at 603 (denying motion to transfer venue where locus of operative facts favored transfer, plaintiff's choice weighed against transfer, and all other factors were neutral). Accordingly, the Court denies defendants' motion to transfer venue.

## CONCLUSION

For the foregoing reasons, the Court denies all of defendants' motions to dismiss, with the exception of the motion to dismiss the claims against defendant S&E for failure to state a claim. The Court further denies defendants' motion to transfer venue to the Central District of California. The Clerk of Court is respectfully requested to terminate the motions pending at Dkt. 15.

Discovery will now commence.  By Monday, December 17, 2018, the parties are to submit a proposed case management plan, consistent with the Court's individual rules, that provides for the close of fact discovery by the end of April 2019.

SO ORDERED.

Paul A. Engelmayer

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: December 12, 2018
       New York, New York